UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIGITAL FILING SYSTEMS, INC.,

    Plaintiff,

v.

FRONTIER CONSULTING, INC.,

    Defendant.
    _____/

Case No. 05-74753

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [5]**

This case has its origins in a patent dispute between Plaintiff Digital Filing Systems ("Digital") and Aditya International ("Aditya"), in which Digital obtained a default judgment against Aditya for copyright infringement based on Aditya's development of "Digicourt" software, which apparently infringes on Digital's "Profile" software. Defendant Frontier Consulting, Inc. ("Frontier") is a small information technology firm located in Houston, Texas, which provides technical support, web site hosting, and software development services. Frontier also maintains a website, on which it has advertised Digicourt software. At issue here is whether this Court has personal jurisdiction over Frontier based on its website and business contacts in Michigan.

**I.    Facts**

Frontier's website is located at www.frontier-consulting.com. According to its President, Reddy Donthi, "The only item you can purchase on Frontier's website is an internet domain name and search engine submission package." (Reply Br. of Frontier Ex.

A.) There are, however, additional "interactive" features on the website, including (1) a "hosting order/quote form which allows visitors to request website hosting," (2) a "Request IT Services" form, which allows visitors to contact Frontier "and describe what services they need," (3) a "Partnership Information" form, which allows people to contact Frontier regarding their interest in becoming technology or consulting partners, and (4) "general email 'contact us' links." (*Id.*)

Prior to learning of the default judgment against Aditya, Frontier offered the Digicourt software for re-sale. Frontier never actually sold a Digicourt software package or license, however, with the exception of one "upgrade" package to a Texas customer. On its website, Frontier displayed product information about Digicourt, but Mr. Donthi states that Frontier never offered the software for sale directly via the website. (*Id.*)[1]

In 2002, Frontier responded to a "Request for Proposal" from the State of Michigan, in which it sought to placed on a "pre-qualified vendor" list. Mr. Donthi states that this contact, which had nothing to do with Digicourt software and which has not materialized, was Frontier's only contact with a Michigan entity. He is "not aware of any business between Frontier and a person or entity in Michigan." (*Id.*)[2]

---

[1] Digital presents evidence which, at first glance, appears to contradict this assertion. A Digital employee claims that on August 17, 2005, she visited Frontier's website. "Through the website, I had the ability to order DIGICOURT by submitting certain information electronically. It also provided a link to [Aditya's] website which offered for sale the computer software . . . ." (Br. of Digital Ex. 2.) The exhibits attached to this affidavit make clear that the Frontier website did not offer Digicourt directly. The affiant is referring to the "Request IT Services" form discussed above, which is neither an order form nor specific to Digicourt software.

[2] Nevertheless, on its website, Frontier proudly claims the State of Michigan as one of its "Hourly IT Services" clients: "Frontier State and Local Contracts include . . . State of Michigan, Dept. of Management Budget." (Br. of Digital Ex. 1E.) Embarrassed as it might

**II.   Standard of Review**

Because Frontier has challenged personal jurisdiction pursuant to Rule 12(b)(2), Digital bears the burden of establishing personal jurisdiction. Unless the Court conducts an evidentiary hearing on the matter, Digital only needs to make a prima facie showing, and the Court views the evidence in the light most favorable to Digital. *See Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 809 (E.D. Mich. 2000). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

**III.   Discussion**

To exercise personal jurisdiction in a diversity of citizenship case, the Court must be satisfied of two requirements: (1) Personal jurisdiction is supported by the law of Michigan, and (2) Personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See, e.g., Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

Michigan's long arm statute extends general personal jurisdiction over companies that are incorporated under Michigan law, have consented to jurisdiction, or who have engaged in "[t]he carrying on of a continuous and systematic part of its general business within the state." Mich. Comp. Laws § 600.711. Digital argues that this Court has general personal jurisdiction based on Frontier's "maintaining a highly interactive website, conducting significant business transactions with Michigan entities, and by targeting Michigan

---

be, Frontier implicitly concedes that this statement stretches the truth.

companies to serve as partners to re-sell and distribute its goods and provide its services to Michigan residents." (Br. of Digital at 9.) The facts discussed above do not support this contention, however. Although its website reaches Michigan residents, Frontier has not sold a single product or service in Michigan. Thus, Frontier has not "carr[ied] on . . . a continuous and systematic part of its general business" within Michigan. The Court has no general personal jurisdiction over Frontier.

There is a closer question as to whether the Court has limited personal jurisdiction over Frontier. Under Michigan's long arm statute, limited personal jurisdiction is appropriate where a claim arises out of in-state activity or is based on activity with an in-state effect. Mich. Comp. Laws § 600.711. Among the relationships that support limited personal jurisdiction are "[t]he transaction of any business within the state" and "[e]ntering into a contract for services to be performed or for materials to be furnished in the state by the defendant." Mich. Comp. Laws § 600.715. "The 'transaction of any business' necessary for limited personal jurisdiction under § 600.715(1) is established by 'the slightest act of business in Michigan.'" *Neogen,* 282 F.3d at 888 (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)).

The exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment. "Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one." *Justballs*, 97 F. Supp. 2d at 810 (citing *Michigan Coalition of Radioactive Materials Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992); *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997)).

Due Process requires that Frontier has established sufficient "minimum contacts" within the state of Michigan, such that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1954). Due Process further requires that Frontier has "purposefully availed" itself of the privilege of doing business in Michigan.

> "Purposeful availment," the "constitutional touchstone" of personal jurisdiction, is present where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original), and where the defendant's conduct and connection with the forum are such that he "'should reasonably anticipate being haled into court there.'" *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citation omitted).

*Neogen,* 282 F.3d at 890 (emphasis in original). Based on these principles, the Sixth Circuit employs a three-part test to determine whether personal jurisdiction is appropriate.

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The first of these requirements can be resolved by examining Frontier's website and its business contacts within Michigan. "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Zippo Mfg. Co. V. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

In *Neogen*, the Sixth Circuit found that there was a "close question" whether the defendant's website was sufficiently interactive to meet the purposeful availment requirement. 282 F.3d at 891. The website provided Michigan residents with passwords, with which they could access their genetic test results online. This was part of the contract the defendant entered into with Michigan residents. In addition to its website interactivity, the defendant "respond[ed] to business inquiries from Michigan residents, mail[ed] completed test results to Michigan customers, and accept[ed] payment by mail from these customers." *Id.* at 890. Notwithstanding these interactive features, the court noted that the website "consists primarily of passively posted information." *Id.* The court opted not to resolve the difficult issue of whether this website alone satisfied the purposeful availment requirement, because the defendant also had significant ongoing business relationships within Michigan, including fourteen yearly contracts with Michigan customers. *Id.* at 891. Viewing all of these facts, the court found that personal jurisdiction was proper.

Frontier's website is not as interactive as the website at issue in *Neogen*. It primarily advertises products and services and provides contact information. The only items available for purchase are an internet domain name and a search engine submission package. This minimal interactivity does not "reveal[] specifically intended interaction" with Michigan residents. *Zippo*, 952 F. Supp. at 1124.

The scope of Frontier's non-website related contacts within Michigan is similarly limited. At most, Frontier has done business with only one Michigan entity, the State itself. The evidence shows that Frontier has never actually sold a product or service to the State, but has merely been granted status as a "pre-qualified vendor." "The proper test for personal jurisdiction is . . . based on . . . whether the absolute amount of business

conducted . . . in Michigan represents something more than 'random, fortuitous, or attenuated contacts' within the state." *Neogen*, 282 F.3d at 891-92 (quoting *Burger King*, 471 U.S. at 475). This standard is not met here, where Frontier simply hoped for business from a single Michigan entity.

The second jurisdictional requirement is that "the cause of action must arise from the defendant's activities" within Michigan. Digital raises three claims for relief: (1) Copyright infringement based on Frontier's alleged "producing, distributing, or placing upon the market" Digicourt software, (2) Writ of garnishment based on fees Frontier has allegedly collected for Digicourt software, and (3) Writ of seizure for Digicourt software allegedly in Frontier's possession. It is abundantly clear from the Complaint that this case centers around Digicourt software.

Frontier presents uncontradicted evidence that its only Digicourt-related business was an "upgrade package" that it sold to a Texas company. While Frontier's act of selling Digicourt software might have had a negligible impact on the overall market for Digicourt, this is not a sufficient basis upon which to exercise personal jurisdiction. Frontier has had absolutely no contact within Michigan regarding Digicourt software.

The final jurisdictional requirement is that the defendant's acts or consequences "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." For all of the reasons discussed above, particularly including the fact that it has never sold a product or service in Michigan or to a Michigan resident or entity, Frontier's contact with Michigan was so limited that it should not "reasonably anticipate being haled into court" here. *Burger King*, 471 U.S. at 474. To exercise jurisdiction over Frontier would offend "traditional notions of fair play and

substantial justice." *Int'l Shoe*, 326 U.S. at 316. To exercise jurisdiction over Frontier would not be reasonable.

### IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby GRANTS Frontier's Motion to Dismiss for Lack of Personal Jurisdiction.

                                         s/Nancy G. Edmunds
                                         Nancy G. Edmunds
                                         United States District Judge

Dated: June 13, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 13, 2006, by electronic and/or ordinary mail.

                                         s/Carol A. Hemeyer
                                         Case Manager